Dianne B. WRIGHT, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 04–96–00687–CR, 04–96–00688–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 8, 1997.

John W. Bull, Pearsall, for Appellant.

Lynn Ellison, Dist. Atty., Reynaldo P. Morin, Asst. Dist. Atty., Jourdanton, for Appellee.

Before RICKHOFF, STONE and DUNCAN, JJ.

## OPINION

STONE, Justice.

This appeal presents the question of whether an individual is subject to prosecution under the Texas Controlled Substances Act[1] for possession of a scheduled drug prescribed by a foreign physician.

### BACKGROUND FACTS

Dianne Wright, a forty-three year old grandmother with no history of criminal conduct, travelled from her home in Sherman, Texas to Nuevo Laredo, Mexico where she was examined by Dr. Ortiz De Dominguez, a fully licensed physician in Mexico. Dr. Dominguez prescribed valium and diethypropion to Wright, and she filled the prescription at a pharmacy in Nuevo Laredo, Mexico. Upon returning to Texas, Wright informed U.S. Customs officials she had prescription drugs and presented her medication and related papers to them. She also completed paperwork indicating that the medication was for personal use. The Customs officials stamped the documents with the notation "Cleared U.S. Customs, Laredo, Texas," and she was allowed to proceed. Twenty miles north, Wright stopped at a border check point where her medications were reviewed. All was found in order and she was again allowed to proceed.

Unfortunately for Wright, the car in which she was travelling was stopped for speeding in Frio County. Sheriff Carl Burris asked for identification and asked if the occupants had any prescription drugs from Mexico. Wright answered affirmatively, and presented her medications and prescription documents to Sheriff Burris. Sheriff Burris then informed Wright that possession of Mexican prescription medication was a felony offense. Wright was indicted for felony possession of controlled substances in violation of section 481.117 of the Texas Controlled Substances Act (hereinafter "the Act"). She was ultimately convicted of this charge and sentenced to two years probation.

On appeal Wright brings forward six points of error in which she urges that the Act is unconstitutionally vague, or alternatively preempted by federal law, and that the trial court abused its discretion in refusing to allow her to confront and examine a witness and in omitting requested instructions from the jury charge.

### VAGUENESS

A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice of the conduct it prohibits, or is so indefinite that it is susceptible to arbitrary and discriminatory arrests and convictions. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *State v. Edmond*, 933 S.W.2d 120, 125–26 (Tex.Crim.App.1996). When addressing a vagueness challenge where, as in the instant case, no constitutionally protected right is concerned, we determine whether the statute is impermissibly vague as applied to the challenging party's specific conduct. *Arnold v. State*, 853 S.W.2d 543, 546 (Tex.Crim.App.

---

1. *See* Tex. Health & Safety Code Ann. § 481.001 et seq. (Vernon 1992).

1993); *Bynum v. State,* 767 S.W.2d 769, 774 (Tex.Crim.App.1989).

The State prosecuted Wright under section 481.117 of the Texas Health & Safety Code. Section 481.117, entitled "Offense: Possession of Substance in Penalty Group 3," provides in pertinent part:

> (a) Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 3, unless the person obtains the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice.

TEX. HEALTH & SAFETY CODE ANN. § 481.117(a) (Vernon 1992). The Act defines practitioner as one who is licensed in Texas to prescribe controlled substances, or one who holds a current Federal Drug Enforcement Administration registration number who may legally prescribe controlled substances in another state. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(39) (Vernon 1992).

The State argued both in the trial court and in this court that section 481.117 is constitutionally sound because it clearly identifies the conduct which is prohibited and the defenses available for such offense. The State maintains that under section 481.117, which expressly states that one cannot legally possess a controlled substance unless such substance was prescribed by a Texas physician or a physician registered with the Federal Drug Enforcement Administration, possession of a controlled substance prescribed by a foreign physician is a criminal offense. Citing to section 481.002(24), which provides that lawful possession includes possession of a substance obtained pursuant to federal law, Wright argues that under the Act, possession of a foreign-prescribed controlled substance is not criminal conduct because federal law expressly authorizes such behavior. The State counters that an inquiry into whether Wright's actions were authorized under federal law is immaterial to the instant case because the term "lawful possession" does not appear in section 481.117. The trial court agreed with both the State's interpreta-

tion of section 481.117 and its position that section 481.002(24) is inapplicable.

Wright argues that such interpretation, if correct, renders the statute void for vagueness because one provision criminalizes certain behavior which another provision seemingly legalizes, thereby failing to apprise an individual of ordinary intelligence of the conduct it prohibits.

■ We agree with the State that the Act is not unconstitutionally vague because it provides fair warning to an individual of ordinary intelligence of the conduct it proscribes. Moreover, despite the artful interpretation given to the Act by Frio County law enforcement officials, we believe that the Act, as written, provides sufficient guidelines to law enforcement authorities to obviate capricious application. However, our agreement with the State's position ends here. As noted, the State has argued that the Act *clearly* criminalizes the act of possession of foreign-prescribed controlled substances. This position is untenable in light of the express language of section 481.117. Moreover, such an interpretation, taken to its logical conclusion, would lead to absurd results. Any foreign visitor in our state travelling with personal medication would be subject to felony prosecution for illegal possession of controlled substances. The plain wording of the Act indicates the Legislature did not intend to criminalize such behavior, or enact a statute that conflicts with federal law. We read the statute as a cohesive, integrated whole and construe it to give meaning to every part. *See* TEX. GOV'T CODE ANN. § 312.005 (Vernon 1988).

■ The introductory language, "except as authorized by this chapter," indicates that other statutory provisions in conjunction with section 481.117 define the offense of illegal possession of controlled substances and the defenses thereto. Thus, contrary to the State's argument, section 481.002(24) is material to the instant case and particularly to the determination of whether Wright's actions constitute criminal behavior. As noted, section 481.002(24) defines lawful possession as "possession of a controlled substance that has been obtained in accordance with state *or federal law.*" TEX. HEALTH & SAFETY CODE

ANN. § 481.002(24) (Vernon 1992) (emphasis added).

The federal Controlled Substances Act, a chapter of the Comprehensive Drug Abuse Prevention and Control Act of 1970, provides that an individual is in lawful possession of a controlled substance if the substance was obtained directly, or pursuant to a valid prescription or order from a practitioner while acting in the course of his professional practice. 21 U.S.C. § 844(a) (1988). A practitioner is one who is licensed in the United States *or the jurisdiction in which he practices.* 21 U.S.C. § 802(21) (1988) (emphasis added). The Controlled Substances Import and Export Act, another section of the Comprehensive Drug Abuse Prevention and Control Act of 1970, prohibits the importation and exportation of controlled substances, *see* 21 U.S.C. §§ 952–955 (1988), but provides that the Attorney General may, by regulation, exempt an individual who has a controlled substance for personal medical use from the import/export requirements of 21 U.S.C. sections 952–955. *See* 21 U.S.C. § 956 (1988). The regulation promulgated in connection with 21 U.S.C. § 956 states that individuals may enter into the United States with a controlled substance which has been lawfully obtained for personal medical use, provided that it is in the original container in which it was dispensed, bearing the name and address of the pharmacy or practitioner who dispensed the substance, and the appropriate declaration that the substance is for personal medical use is made to U.S. Customs officials. 21 CFR § 1311.27 (1996).

The record in the instant case establishes that Wright was engaged in lawful conduct. She travelled to Nuevo Laredo, Mexico to visit Dr. Ortiz De Dominguez, a fully-licensed Mexican physician. Dr. Dominguez prescribed valium and diethypropion to Wright and she filled the prescriptions in Nuevo Laredo, Mexico. At the border, Wright presented her medication and related papers to U.S. Customs officials. She completed paperwork indicating that the medication was for personal use. Wright's documents were stamped with the notation "Cleared U.S. Customs, Laredo, Texas," and she was allowed to proceed. The record thus establishes that Wright was in lawful possession of her prescription medication as defined by the Act because her actions were authorized under federal law. *See* 21 U.S.C. § 844 (1988); 21 CFR § 1311.27 (1996). It is axiomatic that one who is in lawful possession of a substance should not be indicted for and convicted of unlawful possession of a controlled substance. *Cf. Lawton v. State,* 913 S.W.2d 542, 551 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996) (noting that a conviction can never rest upon conduct which is not criminal offense). In light of our disposition of this issue, we do not reach Wright's remaining points of error. *See* TEX.R. APP. P. 90(a).

The judgments of the trial court are reversed, and the causes are remanded to the trial court with instructions to dismiss the indictment.

RICKHOFF, Justice, concurring.

"We ain't got no badges. We don't need no badges. I don't have to show you no stinkin badges."

Bandit Alfonso Bedoya, when his claim that his men are *federales* is challenged by Humphrey Bogart's character in THE TREASURE OF THE SIERRA MADRE (Warner Bros.1948).

Highway robbery—this undoubtedly was Dianne Wright's first thought when, like Bogart's character, she was stopped by Frio County Sheriff Carl Burris on Interstate 35. Until our opinion in this case, however, Mrs. Wright, a grandmother with no criminal history, was deemed a convicted felon by virtue of her possession of $34 worth of sleep and weight-control medication prescribed by a Mexican physician.

One can understand the State's concern if citizens, particularly the young, purchase unprescribed controlled substances for importation; however, a county should not be permitted to adopt a policy subjecting citizens to prosecution for purchasing medication in accordance with a doctor's prescription. Given the number of these cases on appeal in this court, not to mention those that were prosecuted but not appealed, one suspects the

unique reading of this statutory provision was generated by revenue needs. I join in the majority opinion and judgment and write further to ensure that no further "law West of Pearsall" develops.

Frankly, I find it outrageous that: a) Frio County officials have chosen to distinguish their jurisdiction from all others by maintaining that possession of prescription medication dispensed by foreign physicians (particularly Mexican physicians) is a criminal offense; b) immediate pre-trial confinement is the *first* considered option for such an offense; and c) this charge could survive a jury trial and result in this felony conviction, although once the trial judge denied the defense's requested instructions on mistake of law or fact, the jury was all but directed to find Mrs. Wright guilty.

The approach taken by Sheriff Carl Burris in enforcing Frio County's policy illustrates how boorishly this ill-advised policy was pursued. Sheriff Burris testified that he stopped a car for speeding, and "during the course of the traffic contact," noticed a bluish gray bag on the floorboard behind the driver. After noticing the bag, the sheriff then asked whether Mrs. Wright had some prescription medication. This leads me to conclude that upon stopping a vehicle, the first question posed by Frio County law enforcement personnel after requesting a driver's license and proof of insurance is: "Do you have any prescription drugs?"

In any event, Mrs. Wright consented to the removal of the bag, and Sheriff Burris determined that the bag contained medication prescribed by a doctor in Mexico. In fact, the prescription was in the bag with the medication. Sheriff Burris then advised Mrs. Wright that the prescription was not legal, despite being stamped "Cleared U.S. Customs," and told Mrs. Wright that she was going to be charged with either a felony or misdemeanor offense, "and it turned out to be a felony." The effect on Mrs. Wright is best illustrated through her testimony as follows:

A. Then he said, "Ma'am, you need to get out of the car", and I thought then, "Oh, boy, what is going on here", and I got out of the car and he looked at me and he said, "Lady, you're in big trouble."

He said, "You have been—what you have done is a felony", and I said, "Oh, my God".

When he said that, I felt like somebody hit me in the stomach with their fist. A felony, I had no idea that this was against the law, and he said, "Lady, you're in big trouble. You are in big trouble and I'm going to take you to jail", and I said, "Oh, my gosh".

I couldn't believe it, and I thought I was going to throw up, and I was sick to my stomach, and he kept saying, over and over, he said, "Lady, you're in big trouble and you are going to jail", and I was just scared. I didn't know what to do. There was nothing I could do.

Q. Did you say to the Sheriff that you were concerned as to how and why didn't the Border personnel tell you that the drugs were illegal?

A. I was stunned. I had passed through all of those check points, or whatever you call them, and nobody said, "Lady, if you do this, you're going to be in big trouble." Luckily, Mrs. Wright was spared the embarrassment of being arrested and jailed, not because of the nature of the offense, but because Sheriff Burris did not "feel at the time that it would serve any useful purpose" and "if we would have arrested one female that day we would have had to have changed the whole floor plan of the jail, and it would make a bunch of shifting around, and it was on a weekend and there was not that much help...." How fortunate for Mrs. Wright.

During a pre-trial hearing Sheriff Burris explained Frio County's policy for refusing to accept the prescription as valid:

A. It's not recognized by the Texas Department of Public Safety and the State of Texas. A Mexican prescription is not recognized here without a U.S. prescription.

Q. And you're basing that on the Health and Safety Code—

A. Yes, sir.

Q. —of the State of Texas, is that correct—

A. Right.

Q. —and the Controlled Substances Act?

A. Yes, sir.

Q. And it's your position that you would tell the Court here today that Texas does not recognize foreign prescriptions?

A. That is true.

Q. Any foreign prescriptions?

A. I am only aware of Mexico. I'm not aware of anything else, sir. In response to further questioning regarding this policy, the sheriff acknowledged that the statute actually defines lawful possession as possession of a controlled substance that has been obtained in accordance with *state or federal* law. Sheriff Burris then agreed that Mrs. Wright was in legal possession under federal law. Unfortunately, Mrs. Wright was not in lawful possession under Frio County law. Our decision today puts an end to Frio County law.

To do justice, we should be able to restore to Mrs. Wright the peace and dignity she enjoyed before this encounter, her attorney's fees and lost salary. As it is, she will have to be satisfied that she and her attorney brought an end to this pernicious side skirmish in the war on drugs.

DUNCAN, Justice, concurring.

I concur in the judgment but do not join the majority's opinion. In my view, the record establishes the trial court erred in its charge, and this error caused Wright not only "some harm" but "egregious harm"—a conviction and sentence when the applicable law and the uncontroverted evidence mandated a directed verdict of acquittal.

### "Ultimate User" Defense

Wright was not indicted for unlawful possession of a controlled substance. She was indicted for knowing and intentional possession, without regard to whether her possession was lawful. *See* Tex. Health & Safety Code Ann. § 481.117 (offense is knowing and intentional possession) (Vernon Supp.1997). This was appropriate because the lawful or unlawful nature of the possession is not an element of the offense but a part of the "ultimate user" defense. *See id.* §§ 481.002(42) ("ultimate user" defined as person who has lawfully obtained and possesses controlled substance for personal use), 481.062(a)(3) ("ultimate user" exempted from Act and "may possess a controlled substance"). As a result, the State was not required to negate lawful possession in the indictment or, in the first instance, at trial; rather, Wright bore the initial burden of producing evidence raising her "ultimate user" defense. *Id.* at § 481.184(a); *see, e.g., Threlkeld v. State,* 558 S.W.2d 472, 473 (Tex. Crim.App.1977) (State not required to allege possession not pursuant to valid prescription); *see generally McLean v. State,* 527 S.W.2d 76, 82 (Tenn.1975) (provision designed to eliminate technical problems in preparing indictments for statutory violations when statutes create exemptions or exceptions).

Once Wright met her burden of production under section 481.184, the constitutional guarantee of due process required the State to shoulder the burden of proving and persuading the jury beyond a reasonable doubt that Wright was not an "ultimate user," and her possession was therefore unlawful. *See Elkins v. State,* 543 S.W.2d 648, 650 (Tex. Crim.App.1976) (although version of section 481.184(a) then in effect imposed burden of producing evidence supporting exemption on defendant, burden of proof and persuasion remained on State and therefore did not violate due process clause of United States Constitution); *see also* Tex. Penal Code Ann. § 2.03(d) (Vernon 1994).

### Charge Error

The Texas Controlled Substances Act does not clearly label Wright's "ultimate user" argument a "defense," rather than an exception or affirmative defense; therefore, Wright's contention that she was an "ultimate user" bears "the procedural and evidentiary consequences of a defense." Tex. Penal Code Ann. § 2.03(e) (Vernon 1994); *see also id.* § 2.02(c) (defense enacted before

section 2.02 cannot be treated as an "exception"); *Waite v. State,* 169 Tex.Crim. 484, 334 S.W.2d 816, 817 (1960) (defense of lawful possession existed under Texas Narcotics Act). As a result, Wright's "ultimate user" defense was raised by the evidence, the trial court was required to instruct the jury on it, and its failure to do so constituted error. *See* TEX. PENAL CODE ANN. § 2.03(d) (Vernon 1994); TEX.CODE CRIM. PROC. art. 36.14–36.15 (Vernon Supp.1997); *Willis v. State,* 790 S.W.2d 307, 315 (Tex.Crim.App.1990).

As the majority indicates, the record in this case conclusively establishes that Wright obtained and possessed the controlled substances for her personal use pursuant to a valid prescription by a Mexican doctor. This same evidence thus conclusively established "lawful possession," as defined in section 481.002(24), the "ultimate user" defense provided by section 481.062(a)(3) of the Texas Controlled Substances Act, and lawful possession under the federal law reflected in 21 U.S.C. §§ 952–955 (1988) and 21 C.F.R. § 1311.27 (1996). Accordingly, the trial court erred in failing to instruct the jury on Wright's "ultimate user" defense.

### PRESERVATION OF ERROR

As a general rule, to present a complaint on appeal, a defendant must preserve error (1) in the trial court by making an objection and obtaining a ruling, TEX.R.APP. P. 33.1, and (2) in the appellate court by including the complaint as an issue or point of error in his brief. TEX.R.APP. P. 38.1(e). More specifically, to preserve the error in the trial court for its failure to instruct the jury on her "ultimate user" defense in the trial court, Wright was required by statute and case law to either request the instruction in writing or object to its omission. TEX.CODE CRIM. PROC. art. 36.14–36.15 (Vernon Supp.1997); *Elkins,* 543 S.W.2d at 650.

Wright did not expressly request an instruction on her "ultimate user" defense, object to its omission, or bring forward an issue or point of error raising this argument on appeal. Wright did, however, ask the trial court to submit the written definition of "lawful possession" she provided and, when the trial court refused her request, she objected

to the omission on the record. Finally, as to this complaint, Wright has brought forward a point of error.

Wright's attempts to preserve the error in the court's charge at trial and on appeal may thus not have been technically correct. However, Wright's actions were certainly sufficient to call the trial court's attention—and ours—to the error in failing to instruct the jury on Wright's "ultimate user" or "lawful possession" defense under state and federal law; no more is or should be required. *See, e.g., Willis,* 790 S.W.2d at 313. It is simply too far beyond reasoned analysis—much less a system of justice—to attribute to the Texas Legislature the intent to criminalize possession that is lawful under federal law. *See, e.g.,* UNIF. CONTROLLED SUBSTANCES ACT prefatory note (1970) ("The 1970 Uniform Act was designed to complement the federal Controlled Substances Act" and therefore "drafted to maintain uniformity" between the states and the federal government); UNIF. CONTROLLED SUBSTANCES ACT prefatory note (1990) ("Legitimate use of controlled substances is essential for public health and safety, and the availability of these substances must be assured."); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(24) (Vernon 1992). I would therefore hold Wright preserved the substance of her second point of error both in the trial court and in this court.

### HARM RESULTING FROM CHARGE ERROR

When the trial court fails or refuses to instruct the jury on a statutory defense raised by the evidence, a harm analysis is required. *Reich–Bacot v. State,* 936 S.W.2d 961, 962 (Tex.Crim.App.1996). If the charge error was properly preserved, we may reverse the trial court's judgment only if the error "was calculated to injure the rights of defendant"; conversely, if the error was not preserved, we may reverse only if "the error is so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial.'" *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (quoting and construing TEX.CODE CRIM. PROC. art. 36.19).

Balancing the *Almanza* factors can yield only one result: Wright suffered the ultimate

harm as a result of the trial court's error in failing to instruct the jury on her "ultimate user" defense—a conviction and sentence rather than the acquittal mandated by the applicable law and the uncontroverted evidence. *See Almanza*, 686 S.W.2d at 171. Indisputably, a demonstrably erroneous conviction and sentence amounts to the "some harm" justifying a reversal for preserved error. *See Almanza*, 686 S.W.2d at 171. It is just as clear that, even if the error was not preserved, there is and can be no doubt Wright suffered the "egregious harm" required for reversals based upon unpreserved error—regardless of how this test is defined or described. *See, e.g., Almanza*, 686 S.W.2d at 172 (likening "egregious error" to fundamental error, which "go[es] to the very basis of the case"); 43 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 42.109 (Texas Practice 1995) (suggesting court may have implied in *Bonfanti v. State*, 686 S.W.2d 149, 153 (Tex.Crim.App.1985) that "egregious harm" results from error that misleads jury). If the test is to have any meaning at all, it must be met when a defendant is convicted and sentenced for conduct that the applicable law and the uncontroverted evidence deems lawful and outside the reach of the charged statute.

### CONCLUSION

In sum, while I am unable to join the majority's opinion, I agree we must reverse the trial court's judgment and dismiss the charges against Wright. *See* TEX.R.APP. P. 43.3 (when reversal required, court of appeals "must" render the judgment the trial court should have rendered unless a remand is necessary for further proceedings or in the interest of justice); 43 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 43.370 (Texas Practice 1995) (dismiss charges if trial court should have granted directed verdict of not guilty). Any other course of conduct would, in my view, constitute a violation of Wright's constitutionally-guaranteed right to due process.