**Dianne B. WRIGHT, Appellant,**

v.

**The STATE of Texas.**

**Nos. 1595–97, 1596–97.**

Court of Criminal Appeals of Texas, En Banc.

Dec. 9, 1998.

John W. Bull, Grady L. Roberts, Jr., Pearsall, for appellant.

Reynaldo P. Morin, Asst. Dist. Atty., Jourdanton, Matthew Paul, State's Atty., for State.

## OPINION

MANSFIELD, J., delivered the opinion of the Court which McCORMICK, P.J., MEYERS, HOLLAND, and WOMACK, JJ., join.

These cases present two questions: (1) whether the Fourth Court of Appeals erred in holding that it is a defense to prosecution under Texas Health and Safety Code § 481.117(a) for possession of a controlled substance that the substance was obtained pursuant to a valid foreign prescription and brought into this country in accordance with federal law, and (2) whether the Fourth Court of Appeals erred in holding that the record evidence "establishe[d]" that defense.

### The Relevant Facts

On December 11, 1995, a Frio County grand jury returned two indictments in the 218th District Court charging appellant with possession of controlled substances. One of the indictments charged her with possession of 28 grams or more but less than 200 grams of diethylpropion; the other charged her with possession of 28 grams or more but less than 200 grams of diazepam. See Tex. Health & Safety Code § 481.117(a) & (c). The cases were consolidated and tried before a jury on August 12, 1996.

Only three witnesses testified at trial. The State's witnesses, Frio County Sheriff Carl H. Burris and Department of Public Safety Criminalist Juan B. Ortiz, III, testified in relevant part as follows: Sometime on October 28, 1995, Sheriff Burris, while patrolling Interstate Highway 35 in Frio County, observed a vehicle traveling north at excessive speed. Burris pursued and stopped the speeding vehicle and issued a citation to the driver. Burris also asked the driver where he and his passenger, appellant, had been that day. The driver responded that they had been in Mexico, shopping. Burris then asked the driver what they had purchased, and the driver responded that they had purchased prescription drugs. Appellant showed Burris the drugs in question— five small boxes of Tenuate® tablets (diethylpropion) and two small boxes of Valium® tablets (diazepam)—together with a copy of a prescription for the drugs.[1] Appellant ex-

---

1. We take judicial notice that Tenuate is an appetite suppressant and Valium is a tranquilizer. See D: Sifton (ed.), et al., The PDR Family Guide to Prescription Drugs, pp. 569 & 616 (5th ed.1997).

plained to Burris that a Mexican physician had prescribed the drugs for her. Burris examined the prescription, which, although partly in English and partly in Spanish, appeared regular on its face and indicated, among other things, that it was written for appellant. The prescription also indicated that it was written by Dr. Joaquin Izaguirre Quintero, a general practitioner, whose address was stated as J. Ortiz de Dominguez # 2801, Nuevo Laredo, Tamaulipas, Mexico. The prescription was stamped "CLEARED U.S. CUSTOMS LAREDO, TEXAS."

Appellant took the stand in her defense and testified in relevant part as follows: On the day in question, she and her son traveled across the border to Nuevo Laredo to shop and to buy prescription diet pills, which were much cheaper there than in the United States. Appellant met with a Mexican physician, who prescribed a three-month supply of Tenuate, to help appellant lose weight, and a three-month supply of Valium, to help her sleep at night. Appellant had the dual prescription filled at a Nuevo Laredo pharmacy and then spent some time shopping with her son before crossing the border back into Texas. While at the border, appellant declared all of her purchases to United States Customs Service officials, who had her fill out some forms before permitting her entry into the United States.

At the conclusion of the guilt/innocence stage, the jury found appellant guilty of each offense as charged in the indictments. The jury then assessed appellant's punishment for each offense at the minimum authorized by law: imprisonment for two years, probated.

On appeal, appellant argued, among other things, that the statute under which she had been convicted, Texas Health and Safety Code § 481.117(a), was void for vagueness. See *Fogo v. State*, 830 S.W.2d 592, 595 (Tex. Crim.App.1992). The Fourth Court of Appeals rejected that argument, however. *Wright v. State*, 955 S.W.2d 393, 394–395 (Tex.App.—San Antonio 1997). The Court of Appeals did not address directly any of

appellant's other arguments, but it did address, apparently as unassigned error,[2] the question of whether it is a defense to prosecution under § 481.117(a) for possession of a controlled substance that the substance was obtained pursuant to a valid foreign prescription and brought into this country in accordance with federal law. After a lengthy analysis, the court, in effect, held that the answer was yes. *Id.* at 396. The court then addressed the evidence in this case:

> The record in the instant case establishes that Wright was engaged in lawful conduct. She travelled to Nuevo Laredo, Mexico to visit Dr. Ortiz De Dominguez [sic], a fully-licensed physician. Dr. Dominguez prescribed valium and diethypropion [sic] to Wright and she filled the prescriptions in Nuevo Laredo, Mexico. At the border, Wright presented her medication and related papers to U.S. Customs officials. She completed paperwork indicating that the medication was for personal use. Wright's documents were stamped with the notation "Cleared U.S. Customs, Laredo, Texas," and she was allowed to proceed. The record thus establishes that Wright was in lawful possession of her prescription medication as defined by the [Texas Controlled Substances] Act because her actions were authorized under federal law.

*Ibid.* Finally, the court reversed the judgments of the trial court and remanded the cases to that court with instructions to dismiss the indictments.

We subsequently granted the State's petitions for discretionary review to determine whether the Court of Appeals had erred as to either of its holdings. See Tex.R.App. Proc. 66.3(b) & (f).

In its petition and brief to this Court, the State continues to insist that possession of foreign-prescribed controlled substances is always unlawful under § 481.117(a). The State also argues, perforce, that the record evidence does not establish any defense to prosecution and that, therefore, the Court of Appeals erred in remanding the cases to the

---

**2.** An appellate court may, in its discretion, consider unassigned error. *Whatley v. State,* 946

S.W.2d 73, 76 n. 6 (Tex.Crim.App.1997).

trial court with instructions to dismiss the indictments.

### The "Ultimate User" Defense

We turn first to the question of whether it is a defense to prosecution under § 481.117(a) that the controlled substance was obtained pursuant to a valid foreign prescription and brought into this country in accordance with federal law. We agree with the Court of Appeals that the answer to that question is yes, but our analysis takes a different route.

Section 481.117(a) provides: "Except as authorized by this chapter [that is, Chapter 481 of the Texas Health and Safety Code, which comprises the Texas Controlled Substances Act], a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 3,[3] unless the person obtains the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice." Section 481.002(39) defines "practitioner," in relevant part, as a Texas physician or a physician registered with the Federal Drug Enforcement Administration, so the third clause of § 481.117(a) does not authorize the possession of foreign-prescribed controlled substances. However, the first clause of § 481.117(a), "Except as provided by this chapter," indicates that other provisions of the Texas Controlled Substances Act must be examined in order to define accurately the possession offense and the defenses thereto.

Of relevance here is § 481.062, titled "Exemptions," which provides in subsection (a)(3) that an "ultimate user" "may [lawfully] possess a controlled substance under this chapter."[4] Section 481.002(48) defines "ultimate user," in relevant part, as "a person who has lawfully obtained and possesses a controlled substance for the person's own use." And § 481.002(24) defines "lawful pos-

session" as "the possession of a controlled substance that has been obtained in accordance with state *or federal law.*" (Emphasis added.)

A person claiming the benefit of the "ultimate user" exemption or defense has the burden of producing evidence that raises that defense. Tex. Health · & Safety Code § 481.184(a). Once the defense is raised, the trial court must, if requested, instruct the jury that a reasonable doubt on the issue requires that the defendant be acquitted. Tex. Penal Code § 2.03(c)-(e).

Turning to the relevant federal law, we find that the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970 provides that a person may lawfully possess a controlled substance [5] if the substance "was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice." 21 U.S.C. § 844. The Federal Act defines "practitioner" to include "a physician ... licensed, registered, or otherwise permitted, by the United States *or the jurisdiction in which he practices* ... to ... dispense ... a controlled substance in the course of his professional practice." 21 U.S.C. § 802(21) (emphasis added). The Federal Act prohibits the importation of controlled substances but provides that the United States Attorney General may, by regulation, exempt from that prohibition a person who has lawfully obtained a controlled substance for personal medical use. 21 U.S.C. §§ 952–956. The Attorney General, acting through the Drug Enforcement Administration, has promulgated such a regulation, 21 C.F.R. § 1301.26, which provides:

> Any individual who has in his/her possession a controlled substance ... which he/she has lawfully obtained for his/her personal medical use ... may enter ... the United States with such substance ..., providing the following conditions are met:

---

**3.** Penalty Group 3 includes diethylpropion and diazepam. See Tex. Health & Safety Code § 481.104.

**4.** An "ultimate user" exemption exists, apparently, in every state and federal controlled substance statute. See D. Bernheim, *Defense of Narcotics Cases* § 1.11 (1990).

**5.** We need not discuss which substances are controlled under federal law, except to note that diethylpropion and diazepam are. See 21 C.F.R. § 1308.14.

(a) The controlled substance is in the original container in which it was dispensed to the individual; and

(b) The individual makes a declaration to an appropriate official of the U.S. Customs Service stating:

(1) That the controlled substance is possessed for his/her personal use, or for an animal accompanying him/her; and

(2) The trade or chemical name and the symbol designating the schedule of the controlled substance if it appears on the container label, or, if such name does not appear on the label, the name and address of the pharmacy or practitioner who dispensed the substance and the prescription number, if any; and

(c) The importation of the controlled substance for personal medical use is authorized or permitted under other Federal laws and state law.

In summary, it is a defense to prosecution under Texas Health and Safety Code § 481.117(a) for possession of a controlled substance that (1) the substance was obtained abroad for personal medical use directly from, or pursuant to a valid prescription from, a physician permitted in his jurisdiction to dispense controlled substances and (2) the substance was brought into the United States in accordance with 21 C.F.R. § 1301.26.[6]

### The Evidence

■ We turn now to the Court of Appeals' second holding. As noted previously, the Court of Appeals held that the evidence "establishe[d]" that Wright's conduct was lawful. In making that determination, the Court of Appeals took on the role of fact-finder, which it may not do. *Clewis v. State,* 922 S.W.2d 126, 135 (Tex.Crim.App.1996). The role of fact-finder is reserved for the jury. Tex. Code Crim. Proc. art. 36.13. The jury in this case was not instructed on the "ultimate user" defense or any other defense, and it was error for the Court of Appeals to find that the defense was proven conclusively.

Accordingly, we vacate the judgment of the Court of Appeals and remand the case to that court for consideration of appellant's remaining points of error.

PRICE, J., filed a concurring and dissenting opinion.

BAIRD and OVERSTREET, JJ., dissent.

KELLER, J., dissents and filed a separate opinion.

PRICE, Judge, concurring and dissenting.

I concur in the judgment of the majority, to the extent that it holds that it is a defense to prosecution under Tex. Health & Safety Code § 481.117(a), for possession of a controlled substance, that the substance was obtained pursuant to a valid foreign prescription and brought into this country in accordance with federal law.

However, I believe that in this specific case, the Court of Appeals instruction to the trial court to dismiss the indictment was appropriate. Because the jury was not instructed on the applicable "ultimate user" defense, the appropriate remedy would normally be to remand the case so as to allow appellant to present such a defense. But, as the Court of Appeals noted, appellant has established this defense as a matter of law. *Wright v. State,* 955 S.W.2d 393, 396 (Tex. App.-San Antonio 1997, pet. granted). Because dismissal of the indictment is appropriate in this instance, I dissent to the majority's ultimate disposition as to this case.

KELLER, Judge, dissenting.

This case presents a legal sufficiency claim involving a defense to prosecution. The issues before us are: (1) whether obtaining a controlled substance in a foreign country pursuant to a prescription given by a physician in that country supplies a person with a defense when prosecuted for possessing that controlled substance in Texas, and (2) if such a defense exists, whether the

---

**6.** We express no opinion as to whether the evidence at appellant's trial raised the "ultimate user" defense or whether the trial court should have instructed the jury on it. Those are questions the Court of Appeals may need to address as it considers appellant's remaining points of error.

evidence is legally sufficient to require application of that defense as a matter of law. The Court of Appeals reversed the conviction and ordered dismissal of the indictment. The majority holds that a defense exists but forecloses a sufficiency review—apparently believing that such review is not appropriate. I would hold that appellant established a defense to prosecution as a matter of law and would remand this cause to the trial court to enter a judgment of acquittal.

## I. Statutory defense

The starting point in an analysis of the meaning of a statute is, of course, the language of the statute itself. *State v. Hardy*, 963 S.W.2d 516, 519 (Tex.Crim.App.1997). We must give effect to the plain meaning of a statute's words unless the language of the statute is ambiguous or giving effect to the plain meaning would lead to absurd results. *Id.; Boykin v. State*, 818 S.W.2d 782, 785–786 & 786 n. 4 (Tex.Crim.App.1991). Because the language of the statutes at issue in the present case is unambiguous, I limit my inquiry to the statutory language.

In determining plain meaning of the words in a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and usage." TEX. GOV'T CODE § 311.011(a); *Dowthitt v. State*, 931 S.W.2d 244, 258 (Tex.Crim.App. 1996) In addition, we presume that "the entire statute is intended to be effective." TEX. GOV'T CODE § 311.021(2); *Dowthitt*, 931 S.W.2d at 258. Every word in a statute has been used for a purpose and each word, phrase, clause, and sentence should be given effect if reasonably possible. *Dowthitt*, 931 S.W.2d at 258; *Morter v. State*, 551 S.W.2d 715, 718 (Tex.Crim.App.1977), *quoting Eddins–Walcher Butane Co. v. Calvert*, 156 Tex. 587, 591, 298 S.W.2d 93, 96 (1957).

The offense for which appellant was prosecuted provides:

*Except as authorized by this chapter,* a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 3, unless the person obtains the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice.

Texas Health & Safety Code § 481.117(a)(emphasis added).[1] The "unless" clause of the offense does not apply to the present case because of the definition of "practitioner" under the statute. "Practitioner" is defined as someone having the authority to practice or distribute medicines in Texas or in another state if the person has a Federal Drug Enforcement Administration registration number. § 481.002(39). Presumably, the physician in Mexico did not fall within those categories.[2]

Nevertheless, the "Except as authorized by this chapter" phrase clearly indicates that other provisions may establish a defense to prosecution. One such other provision is § 481.062, entitled "Exemptions." That statute provides in relevant part:

(a) The following persons are not required to register and may possess a controlled substance under this chapter:

. . .

(3) *an ultimate user* or a person in possession of the controlled substance under a lawful order of a practitioner or in lawful possession of the controlled substance if it is listed in Schedule V;

. . . .

§ 481.062(a)(3)(emphasis added). This statutory subsection provides three separate defenses: (1) ultimate user, (2) possession of the controlled substance under a lawful order of a practitioner, and (3) lawful possession of the controlled substance if it is listed in Schedule V. Defenses (2) and (3) are inapplicable to the present case because the Mexican physician was not a "practitioner" and because the substances involved do not fall within Schedule V. *See* § 481.036 (for listing of Schedule V substances).

---

1. All further references to sections are to the Texas Health & Safety Code unless otherwise indicated. Any statutory references are to the version in effect at the time of the offense unless otherwise indicated.

2. None of the parties suggest otherwise.

The question, then, is whether appellant qualifies an "ultimate user" under Texas law. An "ultimate user" is defined as "a person who has lawfully obtained and possesses a controlled substance for the person's own use, for the use of a member of the person's household, or for administering to an animal owned by the person or by a member of the person's household." § 481.062(48). An initial question is whether the adverb "lawfully" modifies only the verb "obtained" or whether it also modifies the verb "possesses." "Lawfully" clearly modifies "obtained" because the adverb immediately precedes the verb. But, "lawfully" does not immediately precede "possesses." For "lawfully" to modify "possesses," the verb "possesses" must be part of a parallel construction with the verb "obtained." But, because "lawfully" is imbedded between the helping verb "has" and its object verb "obtained," there is no parallel construction between "obtained" and "possesses" as they relate to the adverb "lawfully" due to a lack of agreement between the helping verb "has" and the posited object verb "possesses." An attempt to map a parallel construction of the provision would look like this: "a person *who has lawfully obtained* and *has lawfully possesses* a controlled substance for the person's own use." Such a parallel construction would be grammatically incorrect. The only proper construction, then, is that "lawfully" modifies "obtained" but does not modify "possesses."

An evaluation of the language of § 481.062, which provides the defense, leads to the same conclusion. The "ultimate user" defense is contained in the same statutory subsection as another defense containing the phrase "lawful possession." § 481.062(a)(3). "Lawful possession" has its own definition in the Texas Controlled Substances Act, to wit: "the possession of a controlled substance that has been obtained in accordance with state or federal law." § 481.002(24). The Legislature could easily have used the already-defined term "lawful possession" in defining "ultimate user" but it did not. And, by pairing the term with one of the other defenses articulated in § 481.062(a)(3), the Legislature further indicated that "lawful possession" was not intended to be a definitional element of the ultimate user defense.

Hence, the ultimate user defense contains two elements: the controlled substance is (1) lawfully obtained and (2) possessed for the person's own use or for use in that person's household. The Texas Controlled Substances Act contains no definition of "lawfully obtained." Undefined words in a statute "are to be understood as ordinary usage allows." *Denton v. State*, 911 S.W.2d 388, 390 (Tex.Crim.App.1995). Under ordinary usage, controlled substances obtained in Mexico are lawfully obtained if Mexico's law so permits. The Court of Appeals and the majority err in concluding that appellant must comply with federal law to establish a defense to prosecution (although she may have in fact complied). So long as appellant properly obtained the substances under the laws of Mexico, those substances are "lawfully obtained" for purposes of the ultimate user defense.

Although neither of the parties have briefed the requirements of Mexico law, we may assume, absent proof to the contrary, that foreign law is the same as the law in the State of Texas. *Langston v. State*, 776 S.W.2d 586 (Tex.Crim.App.1989). Hence, we can presume that a prescription from a physician licensed in Mexico would authorize obtaining the substances in question in Mexico, just as a prescription from a physician licensed in Texas would authorize obtaining the substances in Texas.

## II. Sufficiency

The majority appears to assume that a sufficiency review is inapplicable to defenses; however, such an assumption would be incorrect. We have recognized the legitimacy of mounting a sufficiency of the evidence challenge in the self-defense and statute of limitations contexts. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991)(self-defense); *Proctor v. State*, 967 S.W.2d 840 (Tex.Crim.App.1998)(state has the burden to prove limitations once raised by the defense), *overruling on other grounds, Lemell v. State*, 915 S.W.2d 486(Tex.Crim.App.1995)(discussing sufficiency review and limitations). The Supreme Court has also indicated that defenses may be subject to a sufficiency review.

*See Burks v. United States,* 437 U.S. 1, 5–6, 17–18, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)(holding that a reversal due to insufficient evidence to negate an insanity defense results in an acquittal for double jeopardy purposes).

In determining the sufficiency of the evidence with respect to a defense, "we determine, whether, after reviewing all the evidence in the light most favorable to the prosecution, any rational trier of fact ... would have found against [the defendant] on the [defensive] issue beyond a reasonable doubt." *Saxton,* 804 S.W.2d at 914 (ellipsis added; bracketed material substituted for original). In the present case, both the State (through Frio County Sheriff Burris) and appellant presented evidence that appellant had a prescription from a physician in Mexico for the substances which are the basis of the criminal prosecution. That prescription was stamped "CLEARED U.S. CUSTOMS LAREDO, TEXAS," and appellant testified that she had in fact presented the prescription and the substances to customs officials for inspection and that they had cleared her to come into the country. Sheriff Burris testified that, when he stopped the car appellant was riding in, he began inquiring about purchases because he noticed a bag that looked like one that would come from a pharmacy in Mexico. Appellant freely cooperated with Burris' inquiry and truthfully answered questions about the medications she had purchased. And, Burris acknowledged during testimony that his basis for bringing charges against appellant was that Texas did not recognize foreign prescriptions. Appellant also testified that the medications were for her personal use.

All the evidence in the record, including evidence introduced by the State, shows that the substances in question were legally purchased in Mexico for appellant's personal use. No evidence in the record casts doubt on the validity of the prescription, nor is there any evidence that suggests that the substances were purchased for something other than appellant's own personal use.

On petition for discretionary review, the State now claims that there is no evidence in the record, other than the prescription itself, that the doctor from whom appellant obtained the prescription was a fully licensed physician in Mexico. The State further alleges that the prescription negates the inference that the Mexican doctor was a fully licensed physician because no "Dr." was placed before his name and no "M.D." was placed after his name. However, the record supports neither of the State's assertions. Aside from the prescription form, appellant's testimony supports the proposition that the doctor she saw was a physician. And, the fact that the prescription cleared U.S. customs is also evidence that it was in fact a legitimate prescription. Moreover, the prescription form does contain a "Dr." before the doctor's name. The prescription is signed and underneath the signature line is a printed name: "Dr. Joaquin Izaguirre Quintero." In addition, the prescription form contains the language: "Licencia Sanitaria: 20310," which appears to be a "health license" and the license number.

The facts establish an ultimate user defense as a matter of law. No rational jury could conclude that appellant was not an ultimate user as defined by the Texas Controlled Substances Act. Appellant is therefore entitled to an acquittal and not merely a new trial. Hence, I would remand this cause to the trial court with instructions to enter a judgment of acquittal. Because the majority does not, I must dissent.

BAIRD, J., joins.