# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-05-00692-CR
NO. 03-05-00693-CR

**Edwin Glen Bigon, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
## NOS. 7642 & 7643, HONORABLE JOE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Edwin Glen Bigon appeals his convictions arising from a fatal automobile accident. In three counts in each of two indictments,[1] appellant was indicted for murder, intoxication manslaughter, and manslaughter.[2] After a one-day bench trial, the trial court found appellant guilty on all counts and sentenced him to eighteen years' confinement on each count with the sentences to run concurrently. In six issues, appellant challenges the legal and factual sufficiency of the evidence to support his convictions and the admission of expert testimony, medical records, and test results. We affirm the trial court's judgments of conviction for felony murder. We reverse the judgments

---

[1] Appellant was indicted and charged in two separate cause numbers for having caused two deaths. By agreement, the causes were tried together.

[2] *See* Tex. Pen. Code Ann. §§ 19.02 (murder), 19.04 (manslaughter), 49.08 (intoxication manslaughter) (West 2003 & Supp. 2006).

of conviction for intoxication manslaughter and manslaughter, and we dismiss those counts of both indictments.

**FACTUAL BACKGROUND**

The evidence before the trial court showed that on the night of December 4, 2004, appellant and his eight-year-old son were traveling southbound in his sport utility vehicle on Highway 183 near Lometa when he drove onto the shoulder of the road and then back onto the highway, and then veered into the northbound lane of oncoming traffic. Appellant collided with a vehicle in the northbound lane, causing the death of its driver, Ramona Wallace-Pacheco, and her young daughter, Melanie.

John Carroll testified that he was driving on Highway 183 shortly before 9:00 p.m. when he observed appellant's vehicle traveling at a speed of fifteen miles under the speed limit of 65 miles per hour. As he contemplated passing the vehicle, he "noticed [appellant] was kind of weaving on the road, had weaved over on to the shoulder and weaving back." Carroll slowed his car and dropped back to distance himself from appellant's vehicle. Appellant's vehicle continued to cross over onto the shoulder of the road and then veer back onto the road, crossing into oncoming traffic in the northbound lane. Carroll testified that he observed appellant's vehicle cross the center stripe of the road into oncoming lanes of traffic at least two times:

> Two for sure because the oncoming vehicles had to actually pull over onto the shoulder to get—well, whenever I first observed that, the first time I did that . . . I started flashing my lights and honking my horn and everything. He was driving perfectly in oncoming traffic. They had to pull over onto the shoulder to get around him, and then he would whip back over into our lane that we were driving in.

2

Carroll also observed appellant go off onto the shoulder of the road "numerous times." He explained, "[t]hat's why I just hung back from him and didn't try to pass."

As Carroll followed the vehicle up an incline in the road, the taillights of appellant's vehicle "disappeared." As Carroll crested the hill, he saw an explosion. Carroll pulled his car off the road, turned on his bright lights to illuminate the accident scene, and attempted to aid the victims, two of whom he thought were already deceased.

David Thorp, an investigator with the Lampasas County Sheriff's Department, testified that he was on patrol duty on the evening of December 4 and arrived at the scene of the collision along with other emergency personnel. Appellant was pinned in the vehicle, and the child in appellant's vehicle was injured. Their vehicle was towing a small flatbed trailer carrying a four-wheel ATV-type vehicle. Thorp testified that it appeared from the gear in the vehicle and the trailer that appellant and his son were returning from deer hunting. Thorp assisted the paramedics in removing the child from the vehicle and loading him into an ambulance. Appellant was removed from the vehicle and transported by helicopter to a hospital emergency room where his blood was tested. Based upon this blood sample, DPS chemist Charles Mott testified that appellant's blood-alcohol concentration was 0.19 percent.

Appellant was indicted separately for the felony murder, intoxication manslaughter, and manslaughter of Mrs. Wallace-Pacheco and her daughter, two of the occupants in the other vehicle. The trial court found him guilty of all counts and assessed punishment at eighteen years' confinement on each count with the sentences to run concurrently.

**ANALYSIS**

In six points of error, appellant contends that the trial court erred in denying his motions to quash the indictments, that the evidence was legally and factually insufficient to support his convictions for felony murder and manslaughter, and that the trial court abused its discretion in admitting the testimony of the DPS chemist, appellant's medical records, and the results of appellant's blood-alcohol test. For the reasons discussed below, we reject appellant's contentions and overrule his points of error. As a preliminary matter, however, we first address the issue of double jeopardy, which was not raised by the parties.

### *Double Jeopardy*

Our review of the record discloses unassigned error that should be addressed in the interest of justice. *See Wright v. State*, 981 S.W.2d 197, 199 n.2 (Tex. Crim. App. 1998) (appellate court may, in its discretion, consider unassigned error). It is apparent on the face of the record that appellant's convictions on all three counts of both indictments constitute double jeopardy. *See Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000) (explaining when double jeopardy may be raised for the first time on appeal); *Duvall v. State*, 59 S.W.3d 773, 777 (Tex. App.—Austin 2001, pet. ref'd) (same).

The Fifth Amendment Double Jeopardy Clause protects against prosecution for the same offense after a conviction or an acquittal, and against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The Double Jeopardy Clause is enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 787 (1969). In this case, there is a multiple-punishments violation.

4

The court of criminal appeals's decision in *Ex parte Ervin*, 991 S.W.2d 804 (Tex. Crim. App. 1999), controls our result here. In *Ervin*, the court of criminal appeals examined the intoxication manslaughter and manslaughter statutes under a double jeopardy analysis. Pursuant to a plea agreement, Ervin pleaded guilty and was convicted of intoxication manslaughter and manslaughter. Both offenses arose out of a traffic accident involving a single victim. Ervin was convicted under both statutes and was given a sentence for both convictions. Analyzing the legislative intent concerning the double jeopardy implications of the two statutes, the court held that "manslaughter and intoxication manslaughter are the same offense for double jeopardy purposes when they involve the same victim, and imposing convictions for both in this situation violates the Double Jeopardy clause." *Ervin*, 991 S.W.2d at 817. Likewise, because the record in this case contains evidence of only one act in both indictments that can support a conviction under any of the three counts of the indictments, appellant cannot lawfully be convicted and punished for all three counts. *See id.*

The remedy when a defendant is convicted in a single criminal action of multiple offenses that are the "same" for double jeopardy purposes is to vacate the offending convictions. *Ball v. United States*, 470 U.S. 856, 864-65 (1985); *Landers v. State*, 957 S.W.2d 558, 559 (Tex. Crim. App. 1997). Following the "most serious offense" test of *Landers* in which we affirm the more serious conviction and punishment, we reverse the appellant's convictions for intoxication manslaughter and manslaughter under counts two and three of both indictments. *See Landers*, 957 S.W.2d at 559-61. Given our disposition of the intoxication manslaughter and manslaughter counts of the indictments, we do not address appellant's issues relating only to those counts.

5

*Motions to Quash*

In his first point of error, appellant contends that the trial court erred in failing to grant his motion to quash the indictments because his actions did not meet the requirements to sustain a charge of felony murder. On appeal, he urges that the indictments in each cause were deficient because the State failed to allege and prove a culpable mental state.

A person commits the offense of felony murder if he commits or attempts to commit a felony other than manslaughter and, in the course of and in furtherance of the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. Tex. Pen. Code Ann. § 19.02(b)(3) (West 2003). Appellant was charged with committing a felony when he drove his car in a public place while intoxicated with a child passenger who was younger than 15 years of age. *See id*. § 49.045 (West Supp. 2006). The sufficiency of an indictment is a question of law which we review *de novo*. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004).

A charge of felony murder does not itself require proof of *mens rea*; rather, the underlying felony supplies the culpable mental state. *Johnson v. State*, 4 S.W.3d 254, 255 (Tex. Crim. App. 1999); *Garrett v. State*, 573 S.W.2d 543, 545 (Tex. Crim. App. 1978); *Hilliard v. State*, 513 S.W.2d 28, 33 (Tex. Crim. App. 1974) (intent to kill is supplied by intent to commit underlying felony that ultimately results in death). If any felony other than manslaughter can serve as the underlying felony, then any mental culpability from the underlying felony can support a conviction for felony murder. In this instance, felony DWI does not require proof of a culpable mental state. *See* Tex. Pen. Code Ann. § 49.11(a) (West 2003); *Ex parte Ross*, 522 S.W.2d 214, 217-18 (Tex.

6

Crim. App. 1975); *Mendoza v. State*, No. 08-04-00369-CR, 2006 Tex. App. LEXIS 7086, at \*12 (Tex. App.—El Paso Aug. 10, 2006, no pet.). Nor does the felony charge of DWI with a child passenger require proof of a culpable mental state. Tex. Pen. Code Ann. § 49.045 (West Supp. 2006) (person commits felony offense of DWI with a child passenger when the person commits DWI with a child younger than 15 in vehicle). We may not limit the application of the offense of felony murder when the legislature has not done so. *See Rodriguez v. State*, 953 S.W.2d 342, 354 (Tex. App.—Austin 1997, pet. ref'd). The trial court did not err in declining to quash the indictments. We overrule appellant's first point of error.

### Legal and Factual Sufficiency

In his third and fourth points of error, appellant contends that the evidence is legally and factually insufficient to support the murder convictions because the evidence was insufficient to show (I) that he acted recklessly and (ii) that the act of colliding with the victims' vehicle "was in furtherance" of the underlying felony of DWI with a child passenger.

The evidence is legally sufficient to support a criminal conviction if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Sorto v. State*, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005), *cert. denied*, 126 S. Ct. 2982 (June 30, 2006). If, given all the evidence, a rational jury would necessarily entertain a reasonable doubt as to the defendant's guilt, the due process guarantee requires that we reverse and order a judgment of acquittal. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). In a factual sufficiency

7

analysis, we review the evidence in a neutral light, exercising appropriate deference in order to avoid substituting our judgment for that of the fact finder, particularly in matters of credibility. *Drichas*, 175 S.W.3d at 799; *see also Clewis v. State*, 922 S.W.2d 126, 133-34 (Tex. Crim. App. 1996). We may find the evidence to be factually insufficient if the evidence supporting the finding, considered alone, is too weak to support the jury's finding beyond a reasonable doubt, or the contravening evidence is so strong that the State could not have met its burden of proof. *Drichas*, 175 S.W.3d at 799; *see also Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004).

In his third point of error, appellant contends that the evidence that he recklessly committed an act clearly dangerous to human life by driving a heavily loaded vehicle towing a trailer was legally and factually insufficient. *See* Tex. Pen. Code Ann. § 19.02(b)(3). He contends that the State presented no evidence to show appellant was aware of any risk that he might cause the death of the victims.

The Texas Penal Code provides that a person "acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c) (West 2003). Appellant argues that the only evidence that could have established appellant's pre-accident mental state or conduct was the testimony of John Carroll, who did not witness the exact moment of the collision. Because appellant was not "aware" of any risk, at most, he argues, he should only have been charged with intoxication manslaughter. We disagree.

Carroll's testimony alone that he followed appellant's vehicle weaving on and off the road and, before the collision, over the center stripe on two occasions, can support the fact finder's

8

conclusion that appellant acted recklessly. In addition, Department of Public Safety trooper Jimmy Chestnut investigated the accident on the night it occurred and testified that his observations led him to conclude that the accident was caused by an offset head-on collision between the two vehicles. He concluded that appellant's vehicle was traveling southbound in the northbound lane of oncoming traffic at the point of impact. Based on this testimony, the fact finder could rationally have found beyond a reasonable doubt that appellant committed an act clearly dangerous to human life in his reckless driving. The evidence was legally sufficient to support appellant's convictions for felony murder. Moreover, viewing the evidence in a neutral light, we hold that the evidence supporting the finding that he acted recklessly in committing an act clearly dangerous to human life was not too weak to support the finding beyond a reasonable doubt, nor was the contravening evidence so strong that the State could not have proved it beyond a reasonable doubt. We conclude that the evidence was factually sufficient to support appellant's convictions for felony murder.

In his fourth point of error, appellant contends that the evidence that he committed an act in the course of and in furtherance of the commission of felony driving while intoxicated with a child passenger was legally insufficient. For felony murder, Texas Penal Code section 19.02(b)(3) requires that a person commit or attempt to commit a felony, and "*in the course of and in furtherance of* the commission or attempt . . . he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual." *Id.* § 19.02(b)(3) (emphasis added). Appellant argues that the State failed to prove that his act of driving into the oncoming lane of traffic was "in furtherance" of the felony DWI with a child passenger.

The court of criminal appeals has rejected appellant's argument. In *Johnson v. State*, the defendant was charged with felony murder, and the indictment alleged that he "committed the

9

felony offense of Injury to a Child 'and in the course of and furtherance of commission of said offense, did then and there commit an act clearly dangerous to human life, to-wit: hitting [the victim] with a deadly weapon, to-wit: a blunt object.'" *Johnson*, 4 S.W.3d at 254. The court rejected the same argument urged by appellant here and concluded that the defendant's act of hitting the victim with a deadly weapon was committed in the course of and in furtherance of the felony offense of injury to a child and, further, that there was no merger of the offenses, the primary concern of the "course and furtherance" requirement. *See id*. at 258; *see also Lomax v. State*, No. 10-03-00156-CR, 2006 Tex. App. LEXIS 2527, at *13-14 (Tex. App.—Waco Mar. 29, 2006, pet. granted) (speeding was in the course of and in furtherance of felony DWI). Based on the record in this case, a fact finder could rationally have found beyond a reasonable doubt that appellant committed an act "in the course of and in furtherance of" the felony DWI with a child passenger by driving a heavily loaded vehicle towing a loaded trailer across the center stripe of a roadway into oncoming traffic. We conclude the evidence was legally sufficient to support appellant's convictions for felony murder. We overrule appellant's third and fourth points of error.

### Testimony of DPS Chemist

In his fifth point of error, appellant contends that the trial court erred in allowing DPS chemist Charles Mott to testify concerning appellant's blood-alcohol concentration. Specifically, he complains that it was error to admit Mott's testimony concerning the conversion of appellant's serum-alcohol level to a blood-alcohol level and retrograde extrapolation because this testimony was not reliable.

10

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702. We review a trial court's ruling on the admissibility of scientific expert testimony under an abuse of discretion standard. *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

> The proponent of scientific evidence must demonstrate to the trial court, by clear and convincing evidence, that the scientific evidence is reliable. The proponent of 'hard' scientific knowledge must satisfy three criteria to demonstrate reliability: (1) the underlying scientific theory is valid; (2) the technique applying the theory is valid; and, (3) the technique was properly applied on the occasion in question.

*Russeau*, 171 S.W.3d at 881 (internal footnote omitted); *see also Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

Mott, a chemist with 39 years of experience at DPS, testified that he tested appellant's blood collected after the accident, converting the serum-blood test results to a blood-alcohol content in accordance with accepted scientific principles. Mott also testified to the known factors that he took into account in his retrograde extrapolation, which were also consistent with scientific standards.

Retrograde extrapolation is the computation back in time of the blood-alcohol level—that is, the estimation of the blood-alcohol level at the time of driving based on a test result from some later time. *Mata v. State*, 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001). In *Mata*, the court of criminal appeals set out the various factors a trial court should consider in evaluating the reliability of a retrograde extrapolation. To obtain admission of retrograde extrapolation testimony,

11

the proponent of the testimony must prove by clear and convincing evidence that the testimony is relevant and reliable. *State v. Medrano*, 127 S.W.3d 781, 786 (Tex. Crim. App. 2004); *Weatherred*, 15 S.W.3d at 542.

In determining whether retrograde extrapolation evidence is reliable, the trial court should consider (a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between each test; and (c) whether, and to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation. *Mata*, 46 S.W.3d at 916. These characteristics and behaviors might include, but are not limited to, the person's weight and gender, the person's typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day or night in question, what the person drank, the duration of the period of drinking, the time of the last drink, and how much and what the person had to eat. *Id.*

Appellant contends that Mott knew some of the factors but not others and that the testimony was therefore unreliable. Our review of the record reveals that Mott explained the use of retrograde extrapolation in a clear and understandable matter. He testified that he had practical experience in calculating alcohol concentration using this type of analysis, he explained the scientific theories underlying the analysis, and he demonstrated an understanding of the methodologies of its application. The *Mata* court recognized that "not every single personal fact about the defendant must be known to the expert in order to produce an extrapolation with the appropriate level of reliability." *Mata*, 46 S.W.3d at 916. The court concluded that more limited knowledge of the factors might suffice with more than a single test:

> If the State had more than one test, each test a reasonable length of time apart, and the first test were conducted within a reasonable time from the time of the offense, then an expert could potentially create a reliable estimate of the defendant's Blood Alcohol Content with limited knowledge of personal characteristics and behaviors.

*Id*.

In this case, blood tests were performed on appellant at 9:58 p.m. and 11:35 p.m. Mott testified to his analysis in establishing appellant's blood-alcohol content based upon the blood draws, and that the samples showed a blood-alcohol content of 0.227 and 0.19. Mott also testified that he has been trained to convert alcohol levels derived from a serum sample to a blood-alcohol level that conforms to the legal definition of blood-alcohol content. He testified that the alcohol concentration from a serum sample is approximately 18 percent higher than the blood-alcohol concentration from a whole-blood sample taken from the same person at the same time. He acknowledged that there is some dispute in the scientific community about the accepted value that should be used in the conversion. In addition to the tests, Mott also knew appellant's age, weight and height, when appellant last ate, and what appellant drank. Based upon his review of appellant's responses recorded in hospital records showing appellant's last consumption of food and drink and the two blood tests, Mott concluded that at the approximate time of the accident, appellant had a blood-alcohol content of 0.25.

On cross-examination, Mott agreed that he did not know appellant's "drinking patterns," when he began drinking that day, or what his tolerance for alcohol was, and that information Mott took from medical records that appellant last consumed food at 7 p.m. and had a few beers prior to the accident might not provide comprehensive information. Mott testified that appellant's blood-alcohol level far exceeded the legal limit, testing 0.227 on one test and 0.191 on

a second test. Based upon his analysis of the information provided in the medical records and the blood-alcohol tests, Mott concluded that appellant was in the elimination, or post-absorption, phase of consumption at the time of the accident. Accordingly, Mott concluded that it would not have been possible for appellant to have had a blood-alcohol content below the legal limit of 0.08 at the time of the accident. Given that the chemist knew the results of the tests taken a reasonable time after appellant experienced the accident and knew several of appellant's relevant characteristics, the trial court did not abuse its discretion in overruling appellant's objection to the evidence. We overrule appellant's fifth point of error.

### *Medical Records and Blood-Alcohol Test Results*

In his sixth point of error, appellant contends that the trial court erred in admitting medical records from the hospital and the results of appellant's blood-alcohol test because the State failed to connect the records and the test results to appellant. A trial court's ruling in the admission of evidence is committed to the court's sound discretion, and we will not disturb the ruling unless it falls outside the zone of reasonable disagreement. *Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996).

The objected-to medical records were offered into evidence along with an affidavit averring that they were business records. *See* Tex. R. Evid. 902(10). At trial, appellant objected that the records were hearsay, not authentic, and there was no chain of custody established for the records. Appellant raised similar objections to the State's introduction of the blood-alcohol test results. The trial court overruled the objections. On appeal, appellant asserts that there was no evidence connecting the records or the test results to appellant. Because appellant's objection to the

trial court fails to comport with his argument on appeal, he has not preserved the issue. *See* Tex. R. App. P. 33.1(a). We overrule appellant's sixth point of error.

## CONCLUSION

There are six judgments before us, one for each of the three counts in the two indictments. We affirm the two judgments convicting appellant of count one for felony murder in both indictments. We reverse the four remaining judgments convicting appellant of counts two and three for intoxication manslaughter and manslaughter in both indictments, and we dismiss those counts.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed in Part; Reversed and Dismissed in Part

Filed:   October 4, 2006

Do Not Publish

15